IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DEVIN ALEX PHILLIP PENDLETON                                                        PLAINTIFF

v.                              Civil No. 10-2026

APN JEAN FINLEY                                                                     DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Devin Alex Phillip Pendleton (hereinafter Pendleton) filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Pendleton is currently incarcerated in the Arkansas Department of Correction, Cummins Unit in Grady, Arkansas. The events subject to this lawsuit occurred while Pendleton was incarcerated in the Crawford County Detention Center (CCDC). Specifically, Pendleton alleges he was denied adequate medical care.

On March 13, 2012, Separate Defendants Sheriff Mike Allen, Sergeant Lacy Ree, and Crawford County, Arkansas, were granted summary judgment. Advanced Practice Nurse (APD) Finley has filed a motion for summary judgment (Doc. 50). Plaintiff filed a response (Doc. 69). The motion is now ready for decision.

The case is before me pursuant to the consent of the parties (Doc. 49). A bench trial is scheduled for June 26, 2012.

**1. Background**

Pendleton was arrested and booked into the CCDC on October 10, 2009. Doc. 71, Exhibit 7 at ¶ 2. He remained incarcerated there until early September of 2010. Id.

-1-

Pendleton was placed on suicide watch. Doc. 50, Exhibit 1 at ¶ 3. On October 16, 2009, Pendleton was seen by APN Finley. Doc. 71, Exhibit 7 at ¶ 3. APN Finley was under contract with Crawford County to provide nursing services to inmates of the CCDC. Doc. 50, Exhibit 1, at ¶ 2. Her collaborative physician was board certified internist, Henry N. Edwards. Doc. 50, Exhibit 1 at ¶¶ 2 & 4.

Pendleton advised APN Finley that he was experiencing some depression, anxiety, and had an upset stomach. Doc. 71, Exhibit 7 at ¶ 3. APN Finley noted Pendleton had attempted suicide in the past and assessed Pendleton as being anxious and depressed. Doc. 50, Exhibit 1 at ¶ 3; Doc. 50, Exhibit 4. After consultation with Dr. Edwards, APN Finley prescribed Seroquel, a low dose of 150 mg once a day, to treat depression and anxiety . Doc. 50, Exhibit 1. at ¶ 4. She also noted Pendleton had high blood pressure and prescribed Lisinopril, 20 mg once daily. Id. Finally, with respect to his upset stomach, she advised Pendleton to take some Pepto-Bismal. Doc. 71, Exhibit 7 at ¶ 3. However, she did not provide him with a prescription for Pepto-Bismal and without a prescription he did not have access to the medication. Id.

APN Finley indicates she was familiar with the possible side effects of Seroquel XR and Lisinopril when she prescribed them. Doc. 50, Exhibit 1 at ¶ 7. She believed the choice of medications and the dosage was appropriate for Pendleton. Id. Furthermore, she states that the "fact that the prisoner was on Lisinopril for hypertension does not contraindicate the usage of Seroquel XR at a low dose of 150 mg, once daily." Id. at ¶ 8.

Dr. Edwards indicated he did consult with APN Finley about the appropriate medication for Pendleton. Doc. 50, Exhibit 2 at ¶ 3. The decision was made to place him on Seroquel. Id.

at ¶ 4. Dr. Edwards also noted that there were no contraindications for the low dose of Seroquel because Pendleton was also on Lisinopril. Id. at ¶ 7.

On November 9th, Pendleton fainted and fell off his bunk. Doc. 71, Exhibit 7 at ¶ 4. He injured his head and ankle during the fall. Id. Pendleton filled out a medical request. Id. at ¶ 5. He indicated the medication he was on for depression was having adverse side effects on him. Doc. 70, Exhibit 4. He indicated his depression was worse; he still had no steady sleep pattern; and the medication seemed to cause more panic attacks as well as fainting and dizzy spells. Id. He stated he had fallen that day and believed he had fractured his foot or ankle. Id.

On November 13th, APN Finley examined Pendleton. Doc. 50, Exhibit 1 at ¶ 6. Pendleton told APN Finley that the medication was not helping with his depression or panic attacks. Id. APN Finley did not change Pendleton's medication instead indicating he needed a psychological evaluation. Id. APN Finley saw the November 9th medical request on November 13th when she arrived at the jail. Doc. 71, Exhibit 10 at Request No. 18.

According to Pendleton, on November 13th, he orally told APN Finley that he believed he was having adverse reactions to the Seroquel because he was experiencing dizzy spells and fainting. Doc. 71, Exhibit 7 at ¶ 6. Pendleton states he also spoke to APN Finley about an injury to his foot/ankle from the November 9th fall. Id. According to Pendleton, Finley did not inquire about the fainting spells and did not offer any treatment. Id.

Pendleton continued taking Seroquel until November 28th. Doc 71, Exhibit 7 at ¶ 7. On November 28th, Pendleton collapsed. Id. Immediately after his fainting spell, Pendleton was taken to the emergency room and diagnosed with vasovagal syncope and possible sick sinus syndrome. Doc. 71, Exhibit 9, History and Physical at pg. 2. A cardiac consult was ordered and

Pendleton was noted to have syncope, most likely vasovagal or related to orthostatic hypotension. Doc. 71, Exhibit 9, Consultation at page 2. It was believed the episode might be related to an interaction between Lisinopril and Seroquel. Id. Both medications were discontinued and Pendleton's blood pressure was monitored. Id.

### 2. Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3. Discussion

"The Eighth Amendment prohibits the infliction of cruel and unusual punishment. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders,* 577 F.3d 974, 979 (8th Cir. 2009)(citation omitted); *see also Holden v. Hirner*, 663 F.3d 336 (8th Cir. 2011)(Eighth Amendment's deliberate indifference standard is applied to a denial of medical care claim brought by a pretrial detainee).

"To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical

AO72A
(Rev. 8/82)

needs." *Schaub*, 638 F.3d at 914. "The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 448-49 (8th Cir. 2010). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Taylor v. Bowers*, 996 F.2d 417, 421 (8th Cir. 1992).

In this case, APN Finley initially selected the two drugs. While she maintains Pendleton only complained the Seroquel was not helping, she admits she had received the November 9th medical request. Despite this, she did not inquire about the dizziness and fainting spells or other possible side effects; she did not take Pendleton off either medication or adjust the dosage of either medication; although she indicates she knew the possible side effects of the two medications when she prescribed them, she does not appear to have considered the possible interaction of the two drugs after Pendleton complained of fainting and dizziness; and she offered no form of treatment.

Seroquel XR is recognized as having the potential of inducing hypotension and of enhancing the effects of certain antihypertensive agents. *Physician's Desk Reference*, Seroquel XR (65th ed. 2011) at pg. 756 (drug interactions). Indeed, the interaction of Lisinopril and Seroquel have been specifically noted. http://www.drugs.com/drug-interactions/lisinopril-with-seroquel (Accessed June 11, 2012). Specifically, it has been noted that "[o]thostatic hypotension and syncope associated with vasodilation may occur." *Id*. Under the circumstances, there are genuine issues of material fact as to whether APN Finley exhibited deliberate indifference to Pendleton's serious medical needs.

### 4. Conclusion

For the reasons stated, the summary judgment motion filed by APN Finley (Doc. 50) will be denied by a separate order entered concurrently with this opinion.

**DATED this 11th day of June 2012.**

/s/ *J. Marschewski*
　HON. JAMES R. MARSCHEWSKI
　CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)